UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:19-CV-15-KKC-EBA

CORRENIA J. PROFITT, *Individually*
*and as Administratrix of the Estate of*
*Corbin Raie Hill and Shawn Hill*,                                        PLAINTIFFS,

V.                          **MEMORANDUM OPINION
AND ORDER**

HIGHLANDS HOSPITAL CORP., *et al.*                          DEFENDANTS.

*** *** *** ***

This matter is before the Court on Plaintiffs' motion for leave to file a second amended

complaint. [R. 151]. Plaintiffs seek to amend their complaint to substitute CRNA Brenda Watson

for a previously unknown Defendant and to add facts and details in support of their allegations

against the United States. [*Id*. at p. 2]. Defendants Raymond Monaco, Jr., M.D., HRMC, and The

United States filed separate responses in opposition to the motion for leave. [*See* R. 152, 153, &

155]. Plaintiffs subsequently filed separate replies to each Defendant's response. [*See* R. 156, 173,

174]. The matter, having been fully briefed, is now ripe for decision. For the foregoing reasons, it

is ordered that Plaintiff's motion for leave is denied.

**FACTS**

The Court previously summed up the facts of this case as follows:

On January 2, 2017, Plaintiff Correnia J. Profitt went to the emergency department
at Highlands Regional Medical Center (HRMC). At the time, Plaintiff was pregnant
and approximately a week away from her due date. Plaintiff complained of leaking
fluid, pain, contractions, and decreased fetal movement. The hospital monitored the
Plaintiff for four (4) hours, eventually discharging her. Early the following
morning, January 3, Plaintiff returned to HRMC after suffering from increased
pain. Hospital personnel determined that a placental abruption had occurred, and

an emergency caesarean section was necessary. A short time later, Plaintiff's son
Corbin was delivered. The baby was resuscitated by placement of an endotracheal
tube. However, the tube caused Corbin to suffer a pneumothorax. After continued
respiratory distress, the baby was airlifted to University of Kentucky Medical
Center where he later died.

[R. 146 at pp. 1-2].

Plaintiffs Correnia J. Profitt, individually and as administratrix of the estate of Corbin Rae

Hill, and Shawn Hill brought suit against HRMC, several medical professionals involved in the

care of Profitt and Corbin, and the United States. Plaintiffs now seek to amend their complaint in

order to add a new party, CRNA Brenda Watson, and to add facts that support their allegations

against the United States. Plaintiffs assert that, over the course of discovery and in conjunction

with their expert, they learned that CRNA Brenda Watson deviated from the standard of care when

she inserted the endotracheal tube into the infant, taped it to his lip, and left it without confirming

by x-ray that it was at a safe depth. [R. 151 at p. 4]. Plaintiff's state that Watson admitted during

her deposition that she did not know the required standard of care. [*Id.*]. Plaintiff now seeks to add

Watson as a party to this action.

The Court previously granted in part Plaintiff's motion to exceed the allowable amount of

depositions under Federal Rule of Civil Procedure 30(a)(1), specifically granting leave for

Plaintiffs to depose Dr. Leslieann Dotson. [*See* R. 146]. Following that deposition, Plaintiffs now

assert that Dr. Dotson admitted to violating applicable standards of care in multiple ways. [R. 151

at pp. 6-7]. Dr. Dotson was, at the time of the incident, employed by Big Sandy Health Care, Inc.,

making the already named United States the proper Defendant responsible for her actions. See

*Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir.1990) (citing 28 U.S.C. § 2679(a)); see also,

e.g., *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir.2009) ("The United States is the only

proper defendant in an FTCA action."). Thus, the Plaintiffs now seek to add facts regarding Dr. Dotson's actions to their complaint.

## STANDARD

At this stage of the case, the amendment process lies at the intersection of three separate rules. As a general matter, Rule 15 instructs that, when justice requires leave to amend, a court is to freely grant it. See Fed. R. Civ. P. 15(a)(2). "The thrust of the provision 'is to reinforce the principle that cases should be tried on the merits rather than on the technicalities of pleadings.'" *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987) (quoting *Teft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982))); see also *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986) (observing Rule 15's "liberality in allowing amendments to a complaint"). However, where amendment of the pleading also requires amendment of a scheduled deadline, some preliminary considerations (and Rules) govern. In this scenario, Rule 16 affords necessary flexibility—but within parameters that ensure case predictability, docket management, and party accountability— by providing that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

To add another layer, where the party seeking amendment fails to do so before the operative deadline, Rule 6 allows the Court, "for good cause, [to] extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "The Sixth Circuit has applied, and other Circuits regularly apply, Rule 6(b) when reviewing decisions to amend (or not) a case schedule*." First Tech. Cap., Inc. v. BancTec, Inc.*, No. 5:15-CV-138, 2017 WL 2735516, at *4 (E.D. Ky. June 26, 2017); see, e.g., *Morgan v. Gandalf, Ltd.*, 165 F. App'x 425, 427–28 (6th Cir. 2006). Since Plaintiff's amendment request

would require amending the scheduling order and comes after the deadline to amend pleadings has passed, both Rules 16 and 6 govern the analysis.

"The primary measure of Rule 16's 'good cause standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Financial Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). "Another relevant consideration is possible prejudice to the party opposing the modification." *Id.* at 625. Five factors are considered in determining whether there is excusable neglect: "(1) the danger of prejudice to the nonmoving party; (2) the length of the delay and its impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." *Nafziger v. NcDermott Int'l, Inc*., 467 F.3d 514, 522 (6th Cir. 2006).

### Analysis

Resolving Plaintiffs' motion requires a two-part analysis. The first is whether the scheduling order should be amended to extend the deadline for amending a complaint. Should Plaintiffs succeed in the first step, the second inquiry is whether Plaintiffs should be permitted to actually amend the complaint.

Plaintiffs argue that good cause exists for amending the scheduling order to allow them to file an amended complaint. [R. 151 at p. 8]. The Court set an initial deadline of October 1, 2019 by which parties could file any motions to join additional parties or amend pleadings. [R. 12]. Plaintiffs filed the instant motion on June 18, 2021—about 20 months after the deadline. Plaintiffs assert that they could not comply with the initial deadline because (1) they did not learn of the additional facts for the existing claims until they conducted discovery; and (2) they only recently learned, through their expert, that Watson and Dotson deviated from the standard of care. [R. 151

at p. 9]. Essentially, Plaintiffs argue that in the usual course of diligently conducting discovery, they recently discovered the facts necessitating an amended complaint. They further argue that none of the Defendants are prejudiced by amending the scheduling order.

To demonstrate good cause a party must show that despite their diligence the timetable set forth in the scheduling order could not reasonably have been met. The Court must find that the moving party proceeded diligently before considering whether the nonmoving party is prejudiced. *Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 479 (6th Cir. 2014). A movant who fails to show good cause will not be accorded relief under Rule 16(b)(4) merely because the opposing party will not suffer prejudice. *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003).

The nonmoving parties, in their respective response, assert that Plaintiffs fail to show good cause and lacked diligence in meeting the Court's initial deadline to amend their complaint. The United States argues that the facts Plaintiffs assert they discovered earlier this year were actually known to them all along, as they were contained in the medical records. [R. 155 at p. 4]. Defendant HRMC makes a similar argument, asserting that Plaintiffs received the medical records containing the facts necessitating the amendment more than year prior to Court's deadline to amend pleadings. [R. 153 at p. 4]. Defendant Dr. Monaco also highlights Plaintiffs' receipt of the medical records long before the original deadline. [R. 152 at p. 3].

In reply, Plaintiffs argue that the medical records, while available, did not alert them to deviations in the standard of care by Watson and Dotson. [R. 174 at. 8]. They further assert that the records were false, inaccurate, and vague. [*Id*. at p. 9]. Specifically, Plaintiffs argue that Dr. Monaco falsified medical records in at least one place by misreporting critical times. [R. 156 at p. 2]. As an example of the vagueness of the records, Plaintiffs point to the fact that the medical records do not specify who intubated the infant. [*Id*.]. However, even this fact does not go

unchallenged. Defendant HRMC asserts in its response that the records stated, "0332 Infant intubated at this time per CRNA Brenda." [R. 153 at p. 5]. Plaintiffs assert that this entry is vague and that the phrase "per CRNA Brenda" could mean a number of things. They posit that they did not learn that Watson, in fact, inserted Corbin's endotracheal tube until they deposed her in January of 2021. [*Id*.].

Plaintiffs further point to Dr. Dotson's deposition, where she admitted to numerous deviations from the standard of care that Plaintiffs claim are not apparent from the records. [*Id*. at p. 10]. Plaintiffs subsequently received their expert's report on May 10th, assessing Dotson and Watson's actions. [*Id*.]. In essence, Plaintiffs argument is that at the very least they did not learn of the new facts until after the January deposition of Watson and the April deposition of Dotson, but more importantly they did not understand what those facts meant until May, when their expert returned his report. All of the Defendants argue essentially the same thing, that Plaintiffs had the facts all along, and that their failure to act on them does not constitute the type of excusable neglect that would allow for an amendment.

Here, Plaintiffs have not established that their failure to amend in the time allotted by the scheduling order was excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B). Plaintiffs argue that the medical records were vague or unclear as to how or to what extent Watson and Dotson were involved in the incident that lead to their cause of action. While that may be true, the records *are* clear that Watson and Dotson had some level of involvement.

Simply put, the Plaintiffs have failed to show that they diligently pursued their case and simply could not have met the original deadline. Plaintiffs had the medical records well before the deadline to amend had passed, thus they knew of both Watson and Dotson's involvement all along. See *Bustetter v. CEVA Logistics U.S., Inc.,* 2019 WL 1867430 at *2 (E.D.Ky. 2019) ("The Sixth

Circuit has often considered what a plaintiff knew at the time of the deadline in determining whether the original deadline could have been met."). Plaintiffs' chief argument is essentially that, even though the information about Watson and Dotson was available to them, they did not understand that that information was actionable until their expert told them. Since the information was available in the medical records from the start, nothing precluded Plaintiffs from including it in the initial complaint. Thus, the Court finds that the first element of the good cause analysis weighs against allowing an amendment.

In regards to prejudice to the non-moving parties, the Sixth Circuit has specifically held that allowing amendments to a complaint after the close of discovery imposes prejudice on the non-moving party. See *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 641 (6th Cir. 2018). In this case, expert discovery remains open until September 27, 2021 [*See* R. 198] but fact discovery closed in January of this year. Existing Defendants would no doubt be prejudiced to some extent, and the fact discovery period would need to be reopened. Since dispositive motions have not been filed and expert discovery remains open, adding a new party and new allegations at this stage will result in substantial prejudice to existing Defendants.  Plaintiffs' proposed newly added party would also require extensive fact and expert discovery, halting any progress in a case that has been litigated over the course of two-plus years already.

Here, Plaintiffs have failed to show diligence in meeting the Court's initial deadline to amend their complaint. Plaintiffs further fail to show excusable neglect in not acting sooner to understand the information contained in the medical records which they possessed prior to filing their first complaint. Moreover, the opposing parties would suffer prejudice—requiring both existing and new Defendants to engage in an even longer discovery process in an already lengthy case. Therefore, having considered the motion and being sufficiently advised,

IT IS ORDERED that Plaintiffs' motion for leave to file a second amended complaint is

[R. 151] is DENIED.

Signed August 12, 2021.

**Signed By:**

_Edward B. Atkins_

**United States Magistrate Judge**