UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| CORRENIA J. PROFITT, *Individually and as Administratrix of the Estate of Corbin Raie Hill*, and SHAWN HILL,<br><br>Plaintiffs,<br><br>V.<br><br>HIGHLANDS HOSPITAL CORPORATION et al.,<br><br>Defendants. | CIVIL ACTION NO. 7:19-15-KKC<br><br><br>ORDER |

*** *** ***

This matter is before the Court on Plaintiff Correnia J. Profitt's Objections (DE 219) to the August 13, 2021 Memorandum Opinion and Order (DE 202) by Magistrate Judge Atkins denying Plaintiffs' Motion for Leave to File a Second Amended Complaint. Defendants having responded to the objections (DE 230) and Plaintiffs having replied (DE 242), the matter is now ripe for the Court's review. For the reasons set forth herein, the Objections (DE 219) are OVERRULED. The Plaintiff's Motion for Leave remains DENIED.

## I. BACKGROUND

In January 2017, Correnia J. Profitt went to the emergency department at Highlands Regional Medical Center (HRMC) after experiencing health issues related to her pregnancy. The hospital monitored her for several hours before discharging her. Plaintiff returned to HRMC the following morning, and hospital personnel determined that a placental abruption had occurred, necessitating an emergency caesarean delivery of Plaintiff's child. Plaintiff's son, Corbin Raie Hill, was delivered, but required placement of an endotracheal tube. Corbin

1

suffered pneumothorax and was airlifted to University of Kentucky Medical Center where he later died. (DE 202 at 1–2.)

Profitt, individually and as administratrix of the estate of Corbin Raie Hill, and Shawn Hill, Corbin's father, originally sued HRMC and other defendants in January 2019 in Floyd County Circuit Court, but Defendants timely removed to federal court. (DE 1.) This Court entered a scheduling order, which set a deadline of October 1, 2019 for parties to file any motions to join additional parties or amend pleadings. (DE 12.) Plaintiffs timely moved to file a First Amended Complaint, which the Court granted, primarily to include claims against the United States pursuant to the Federally Supported Health Centers Assistance Act, 42 U.S.C. §§ 233 et seq. ("FSHCAA"), and the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq., ("FTCA"), and 28 U.S.C. §§ 1346(b)(1) and 2401. (DE 38.)

The October 1, 2019 deadline for adding parties or amending pleadings passed unchanged, although subsequent amendments to the scheduling order ultimately extended the fact discovery deadline to January 29, 2021, the expert discovery deadline to September 27, 2021, and the dispositive motion deadline to October 27, 2021. (DE 149; DE 198.)

In June 2021, Plaintiffs moved for leave to file a Second Amended Complaint (DE 151), which was opposed by all defendants. (DE 152; DE 153; DE 155.) The SAC sought to add: (1) nurse anesthetist Brenda Watson ("CRNA Watson") as a defendant; (2) allegations of negligence by pediatrician Leslieann Dotson ("Dr. Dotson"), for which Plaintiffs argue the United States is vicariously liable; (3) a claim for negligent infliction of emotional distress as to Shawn Hill; (4) separate punitive damages claims as to Profitt, the Estate, and Hill (rather than the "Punitive Damages (Plaintiffs)" section included in the FAC); and (5) an additional prayer for relief due to the destruction of Corbin's earning capacity. (DE 151.) Plaintiffs argue that these additions only became apparent after one of their experts, Allan Greissman,

2

reviewed the record, including the depositions of CRNA Watson and Dr. Dotson, from January 2021 and April 2021, respectively. (*Id.*)

In August 2021, Magistrate Judge Atkins denied Plaintiffs' motion for leave to file a SAC (DE 202), and Plaintiffs objected to his opinion and order. (DE 219.) Defendants HRMC having responded to Plaintiffs' objections (DE 230) and Plaintiffs having replied (DE 242), the matter is now ripe for the Court's review.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 72 distinguishes between "nondispositive" and "dispositive" pretrial matters that may be handled by a magistrate judge. While not all district courts have agreed on how to categorize a motion for leave to amend, *see HCC, Inc. v. RH & M Machine Co.*, 39 F. Supp. 2d 317, 321–22 (S.D.N.Y. 1999) (describing the Second Circuit's intra-circuit split on the question), the plaintiffs (DE 219 at 13) and defendants (DE 230 at 6) in this case and district courts in this circuit seem to agree that it is a nondispositive matter. *See Bustetter v. CEVA Logistics U.S.*, No. 18-58-DLB-EBA, 2019 WL 1867430, at *2 (E.D. Ky. Apr. 25, 2019); *Childress v. Michalke*, No. 10-11008, 2012 WL 5986643, at *2 (E.D. Mich. Nov. 29, 2012); *Hamer v. County of Kent*, No. 1:13-CV-504, 2014 WL 1463905, at *1 (W.D. Mich. Apr. 15, 2014); *Bays v. Warden, Ohio State Penitentiary*, No. 3:08-CV-076, 2014 WL 29564, at *1 (S.D. Ohio Jan. 3, 2014). According to Fed. R. Civ. P. 72(a), when dealing with nondispositive matters handled by a magistrate judge, the district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."

In the Sixth Circuit, the "clearly erroneous or contrary to law" standard requires district courts to review a magistrate judge's legal conclusions de novo and factual findings for clear error. *Bisig v. Time Warner Cable, Inc.*, 940 F.3d, 205, 221 (6th Cir. 2019). A factual finding is "clearly erroneous" when although there is evidence to support it, the reviewing

3

court is left with the definite and firm conviction that a mistake has been committed; a legal conclusion is "contrary to law" when it fails to apply or misapplies relevant statutes, case law, or rules of procedure. *Id.* at 219.

### III. ANALYSIS

Plaintiffs appear to make the following objections: (1) Magistrate Judge Atkins incorrectly applied Fed. R. Civ. P. 6(b) to Plaintiffs' motion; and (2) Magistrate Judge Atkins incorrectly concluded that Plaintiffs did not demonstrate "good cause" to modify the scheduling order under Fed. R. Civ. P. 16(b)(4). (DE 219.) Plaintiffs also mention that Magistrate Judge Atkins did not address whether leave to amend was appropriate under Fed. R. Civ. P. 15, although this does not appear to be a formal objection. To the extent that Plaintiffs mention other disagreements with Magistrate Judge Atkins' order (DE 219 at 5), those disagreements fall within one of the above listed objections.

These objections relate to legal conclusions and, thus, the Court will review them de novo. The Court will consider each of Plaintiffs' objections in turn and, as required, will reverse any legal conclusions that are contrary to law.

### A. Applicability of Fed. R. Civ. P. 6(b)

In considering Plaintiffs' motion for leave to amend, Magistrate Judge Atkins found that "both Rule 16 and Rule 6 govern the analysis." (DE 202 at 3–4.) He went on to find that Plaintiffs did not establish that "their failure to amend in the time allotted by the scheduling order was excusable neglect" under Fed. R. Civ. P. 6(b). (*Id.* at 6.)

Plaintiffs object to Magistrate Judge Atkins' conclusion that Rule 6(b) applied to their motion, calling the conclusion "erroneous." (DE 219 at 15.) Plaintiffs argue that Rule 16(b)'s "good cause" standard—not Rule 6(b)'s "excusable neglect" standard—applies. (*Id.* at 14.)

Several cases in this district have examined this exact debate. *See First Tech. Cap., Inc. v. BancTec, Inc.*, No. 5:16-CV-138-REW, 2017 WL 2735516, at *4 (E.D. Ky. June 26, 2017)

4

(collecting cases in which the Sixth Circuit and other Circuits have applied Rule 6(b) when reviewing decisions to amend a case schedule); *id.* at *4 n.7 ("The Court could find . . . no Sixth Circuit case *holding* that Rule 6(b) does not apply in such a context. . . . The Circuit, quite simply, has never fully grappled with the precise question of the Rule 16 v. Rule 6 interplay."); *Century Indemnity Co. v. Begley Co.*, 323 F.R.D. 237, 240–41 (E.D. Ky. 2018) ("[W]hether Rule 6's 'excusable neglect' standard or Rule 16's 'good cause' standard applies when a party files a motion after the scheduling order deadline—and which standard requires a higher showing—is a source of ambiguity.") (collecting cases); *Bustetter*, 2019 WL 1867430, at *2 n.2 ("There is some question as to whether Rule 6 of the Federal Rules of Civil Procedure also applies when a motion for leave to amend a complaint is sought after the deadline set in the scheduling order. . . . [T]his Court will consider the Motion under the standards of both Rule 16 and Rule 6 . . .").

A legal conclusion is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure. *Bisig*, 940 F.3d at 219. Because other courts in this Circuit have applied the Rule 6(b) standard when reviewing the decision to amend a scheduling order and the question of Rule 6(b)'s applicability remains unsettled, this Court cannot hold that Magistrate Judge Atkins' application of the standard here was contrary to law. Thus, Plaintiffs' objection to the application of Rule 6(b)'s "excusable neglect" standard is overruled.

**B. Existence of "Good Cause" to Modify the Scheduling Order**

The primary measure of Rule 16's "good cause" standard is the moving party's diligence in attempting to meet the scheduling order's requirements, but courts also consider possible prejudice to the party opposing the modification. *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 879 (6th Cir. 2020) (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)).

### 1. Diligence

Magistrate Judge Atkins found that the Plaintiffs "failed to show that they diligently pursued their case and simply could not have met the original deadline." (DE 202 at 6.) This conclusion was primarily based on the fact that the Plaintiffs have possessed the medical records, which mention CRNA Watson and Dr. Dotson, since the beginning, and the Plaintiffs thus could have included allegations against Watson and Dotson prior to the deadline to amend the pleadings. (*Id.* at 6–7.)

Plaintiffs object to Magistrate Judge Atkins' conclusion as to their diligence on the basis of the following assertions: (1) the medical records did not explicitly indicate that CRNA Watson performed the intubation; (2) the Plaintiffs could not have known that the information in the medical records indicated negligence by Watson and Dotson until Plaintiffs' medical expert reviewed the records and depositions; and (3) the additional allegations in the proposed SAC against Dr. Dotson relate to Dotson's April 2021 deposition, so Plaintiffs' June 2021 motion for leave to amend was filed diligently at least as to those allegations. (DE 219 at 16–22.)

Under the "diligence" prong of Rule 16(b)'s "good cause" standard, a court choosing to modify a scheduling order may do so only if the scheduling order "cannot reasonably be met despite the diligence of the party seeking the extension." *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003). Thus, the Court must determine whether Plaintiffs could reasonably have filed an amended complaint containing the proposed additions prior to the October 1, 2019 deadline.

As to the addition of CRNA Watson as a defendant[1] and the allegations against her, Plaintiffs' argue that the medical record annotation that Corbin was intubated "per CRNA

---

[1] In Plaintiffs' Motion for Leave to File Second Amended Complaint, Plaintiffs say that they seek to "substitute CRNA Watson for an 'Unknown Defendant' in this action . . . ." (DE 151 at 2.) Plaintiffs appear to have

6

Watson" was too ambiguous to necessitate a negligence claim against Watson at the outset. (DE 219 at 18–21.) The medical record indicated: "0332 Infant intubated at this time per CRNA Brenda . . ." (DE 220-1.) Plaintiffs first contend that the word "per" in the record is ambiguous and does not clearly indicate that CRNA Watson intubated Corbin. (DE 219 at 19.) Plaintiffs next contend that they could not have known that the intubation was performed negligently, regardless of who did it. (*Id.*) On the same page of the medical record, "per" is used in conjunction with an individual on approximately 12 occasions. (DE 220-1.) The usage throughout appears to indicate that an action was taken by an individual, but—as Plaintiffs point out—there are other possible meanings, such as that the individual ordered the action or just relayed the information. Regardless of the precise meaning of "per," CRNA Watson was clearly involved in the post-delivery care of Corbin. In addition, a handwritten statement by Defendant Monaco produced in August 2019 along with his answers to Plaintiffs' first set of interrogatories confirms that CRNA Watson intubated Corbin. (DE 231-3 at 17.) Plaintiffs seek to minimize this statement—by noting that it was not part of the medical record and that it was hearsay—but a reasonably diligent plaintiff would have been on notice that CRNA Watson likely intubated the infant. (DE 242 at 6–7.) When Plaintiffs moved to file their FAC in September 2019, they already attributed Corbin's death to medical negligence, noting: "HRMC and HHS by and through their duly authorized agents, servants, and/or employees, undertook to examine, diagnose, treat, attend and care for Corbin and his mother[;]" "In rendering medical care, Defendants failed to exercise that degree of care and skill which is expected of a reasonably competent

---

abandoned that position (DE 219 at 12) ("The predominate [sic] purpose of the SAC is . . . to *add* CRNA Watson as a party-defendant[.]") (emphasis added), yet they still seek to file their SAC, which contains the original wording. To the extent Plaintiffs' position is ambiguous, the Court notes that substituting a named defendant for an "Unknown" defendant is considered a change in parties, not a mere substitution. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996).

7

physician or healthcare provider acting in the same or similar circumstances[;]" and ". . . Defendants caused severe and irreversible injuries to Corbin, resulting in his death." (DE 39 at 8–9.) Thus, prior to the October 1, 2019 deadline, Plaintiffs alleged that the treating medical professionals caused Corbin's death due to negligence, and Plaintiffs knew that CRNA Watson was one of those medical professionals and likely intubated Corbin. A complaint must state a claim that is plausible on its face, meaning the court could draw the reasonable inference that the defendant is liable for the misconduct alleged. *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011). Plaintiffs could reasonably have included a plausible claim against CRNA Watson for medical negligence in an amended complaint prior to the October 1, 2019 deadline based on the information available. Therefore, Magistrate Judge Atkins' conclusion that Plaintiffs failed to show adequate diligence as to the allegations against CRNA Watson was not contrary to law.

Much of the above analysis carries over to the allegations against Dr. Dotson. The allegations Plaintiffs include in the proposed SAC concerning Dr. Dotson essentially relate to her allegedly negligent supervision of Corbin's care. (DE 155-1 at 15–20.) Plaintiffs argue that the allegations come from Dr. Dotson's April 2021 deposition, so they naturally could not have been included in an amended complaint prior to the October 1, 2019 deadline. (DE 219 at 22.) However, a complaint need not contain detailed factual allegations, so long as it contains a facially plausible claim. *Center for Bio-Ethical Reform, Inc.*, 648 F.3d at 369. Dr. Dotson is mentioned approximately ten times in the original medical record detailing Corbin's post-delivery care, more than any other individual. (DE 220-1.) If Plaintiffs already blamed Corbin's death on medical negligence prior to the October 1, 2019 deadline—which they did (*see* DE 39 at 8–9)—Plaintiffs could reasonably have included a claim in the FAC against Dr. Dotson, the physician that was supervising and directing Corbin's care according to the medical record. Therefore, Magistrate Judge

8

Atkins' conclusion regarding Plaintiffs' diligence as to the allegations against Dr. Dotson was also not contrary to law.

Although Plaintiffs' objections focus on the allegations against CRNA Watson and Dr. Dotson, Plaintiffs also sought to amend their complaint to add a claim for negligent infliction of emotional distress as to Shawn Hill; to separate the punitive damages claims as to Profitt, the Estate, and Hill (rather than keep the "Punitive Damages (Plaintiffs)" section included in the FAC); and to include an additional prayer for relief due to the destruction of Corbin's earning capacity. All of these amendments—based on information that has been available since the outset of this case—could reasonably have been made prior to the October 1, 2019 deadline.

## 2. Prejudice

Magistrate Judge Atkins also concluded that granting leave to file an amended complaint would result in substantial prejudice to the existing defendants because it would require extensive fact and expert discovery, which has already been lengthy. (DE 202 at 7.)

Plaintiffs object by arguing that additional discovery would be limited because only two of Plaintiffs' experts discussed CRNA Watson, and she shares the same counsel as Dr. Monaco. (DE 219 at 23–24.)

"The Sixth Circuit has specifically held that allowing amendments to a complaint after the close of discovery imposes prejudice on the non-moving party." *Bustetter*, 2019 WL 1867430 at *3 (citing *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 641 (6th Cir. 2018) (collecting cases)). In *Pittman*, the parties had already briefed dispositive motions—which is not the case here—but, in *Garza v. Lansing School District*, the Sixth Circuit found prejudice when a motion for leave to amend was filed nine months after the scheduling order's deadline to join parties or amend the pleadings. *See Garza*, 972 F.3d at 879–880. The Court in *Garza* cited as prejudicial the possibility of new depositions of individuals who had already been

9

deposed, additional discovery, and additional delays for attorney preparation. *Id.* at 880. The same considerations apply here, where the motion for leave to amend was filed 20 months after the scheduling order's deadline. In addition to re-opening discovery, allowing Plaintiffs to file the SAC at this point would lead to extensive further legal briefing, as the defendants have already indicated that they believe the new allegations to be time-barred and legally deficient in various ways. (DE 152 at 4–5; DE 153 at 14–16; DE 155 at 6–9.) As a result, it is likely that granting Plaintiffs' motion for leave to amend would substantially delay the proceedings in this case and prejudice all involved. Therefore, Magistrate Judge Atkins' conclusion that Defendants would be prejudiced is not contrary to law.

Because Magistrate Judge Atkins' conclusions as to both diligence and prejudice were not contrary to law, his determination that Plaintiffs did not meet Rule 16(b)'s "good cause" standard was also not contrary to law. Thus, Plaintiffs' objection to Magistrate Judge Atkins' Rule 16(b) analysis is overruled.

**C. Failure to Apply Fed. R. Civ. P. 15**

Although Magistrate Judge Atkins mentioned Fed. R. Civ. P. 15—which governs amended pleadings—in his order, he did not analyze whether leave to amend was appropriate under Rule 15. (DE 202 at 3.) This analysis would typically involve a discussion of the "*Foman* factors" weighing against leave to amend, which include undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiffs do not highlight this omission as a specific objection, but they do mention it (DE 219 at 13), so the Court would like to briefly address the issue. While Rule 15 and the *Foman* factors do govern a typical "leave to amend" analysis, motions for leave to amend *after* the scheduling order's deadline must survive a preliminary step before a court can conduct that analysis. "Once the scheduling order's deadline passes, a plaintiff first must show good

10

cause under Rule 16(b) for failure to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary*, 349 F.3d at 909; *see also Carrizo (Utica) LLC v. City of Girard, Ohio*, 661 Fed. App'x 364, 367 (6th Cir. 2016) ("[N]otwithstanding Rule 15's directive freely to give leave to amend, a party seeking leave to amend after the scheduling order's deadline must meet Rule 16's good-cause standard in order for the district court to amend the scheduling order.").

Because Magistrate Judge Atkins found that Plaintiffs did not meet Rule 16's "good cause" standard, his decision not to conduct a Rule 15 analysis was appropriate and was not contrary to law. The Court does not consider Plaintiffs' comment about the decision to be a formal objection, but, if it was, the Court would overrule that objection.

## IV. CONCLUSION

The Court determines that neither Magistrate Judge Atkins' application of Rule 6(b), nor his determination that Plaintiff failed to demonstrate "good cause" under Rule 16(b) were contrary to law. Accordingly, **IT IS HEREBY ORDERED**:

(1) Plaintiffs' Objections to the Magistrate Judge's Opinion and Order (DE 219) are **OVERRULED**; and

(2) The Magistrate Judge's Opinion and Order (DE 202) denying Plaintiffs' motion for leave to file a second amended complaint is **AFFIRMED**.

This 27th day of October, 2021.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY