UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:19-CV-00015-KKC-EBA

CORRENIA J. PROFITT, *Individually
and as Administratrix of the Estate of
CRH*, *et al.*,                                                                                                         PLAINTIFFS,

V.               **MEMORANDUM OPINION & ORDER**

HIGHLANDS HOSPITAL CORPORATION,
d/b/a HIGHLANDS REGIONAL MEDICAL
CENTER, *et al.*,                                                                                                        DEFENDANTS.

\*\*\* \*\*\* \*\*\* \*\*\*

### I. INTRODUCTION & FACTUAL BACKGROUND

Plaintiffs move for an extension of time to disclose a rebuttal expert witness. [R. 201]. Also, Defendants Highlands Hospital Corporation d/b/a Highlands Regional Medical Center and Consolidated Health Systems, Inc. d/b/a Highlands Health System (collectively, "HRMC") move for an extension of time to depose the witness in the event the Court grants Plaintiffs' motion. [R. 241] Second, Defendants move for protective orders to prevent Plaintiffs from discovering financial information belonging to Defendants' expert witnesses. [R. 234, 235]. Finally, Plaintiffs move to compel compliance with subpoenas issued to Defendants' experts as to the requested financial information. [R. 236]. Having reviewed the record and the briefing on these motions, this matter is now ripe for decision.

### II. MOTIONS FOR EXTENSION OF TIME

Plaintiffs in this action move for an extension of time to disclose a rebuttal expert witness. [R. 201]. Highlands Hospital Corporation d/b/a Highlands Regional Medical Center and

Consolidated Health Systems, Inc. d/b/a Highlands Health System (collectively, "HRMC") asserts that an extension would result in prejudice because of the then-existing deadline for expert discovery as set forth in the Court's August 25, 2020 Amended Scheduling Order. [R. 212 at pg. 2]. As a result, HRMC moves for an extension of time in the event the Court grants Plaintiffs' motion [R. 201] in order to depose Plaintiffs' proposed expert witness. [R. 241]. In addition, Defendants United States and Dr. Raymond Monaco indicated to Plaintiffs that they had no objection to the extension so long as it had sufficient time to review the expert's report prior to their taking a deposition. [R. 201-6 at pg. 1]; *see also* [R. 204].

For good cause, the Court may generally extend the time for parties to act within a specific time. Fed. R. Civ. P. 6(b)(1). A determination of whether good cause exists for an extension is, by the plain language of Rule 6(b)(1), discretionary. *Ott v. Fed. Home Loan Mortg. Corp.*, 535 F. App'x 488, 489 (6th Cir. 2013). During discovery, HRMC produced two medical consent treatment forms, dated January 2, 2017 and January 3, 2017 respectively (hereinafter, "Consent Forms"). [R. 201, 201-1, 201-2]. At issue is whether the signatures on the forms, which granted HRMC consent to treat Profitt on both dates, were signed by Plaintiff Correnia Profitt. In her deposition, Profitt contends that neither form bears her signature. [R. 201-3 at pg. 4, 6]. On July 12, 2021, HRMC timely disclosed its experts, including a forensic document examination ("FDE") expert witness, Grant R. Sperry, whose report details his expected testimony regarding an examination of the handwriting on the Consent Forms. [R. 201 at pg. 4; R. 201-4 at pg. 5–10]. His expected testimony included an opinion that it was "more likely than not" that the signature contained on one form was made by Profitt. [R. 201-4 at pg. 9]. Following HRMC's disclosure of the FDE expert, and pursuant to Fed. R. Civ. P. 26(a)(2)(D), Plaintiffs were obliged to disclose expert testimony "intended solely to contradict or rebut evidence on the same subject matter

identified by another party" within 30 days of HRMC's disclosure, or August 11, 2021. Plaintiffs moved for an extension of time to make this disclosure on August 12, 2021 [R. 201] and subsequently disclosed their rebuttal FDE expert, Robert W. Lesnevich, on August 27, 2021. [R. 218].

Here, Plaintiffs retained a FDE expert in or around December 2020, several months ahead of HRMC's July 2021 disclosure of its own FDE expert. Plaintiffs later learned that their FDE expert had unwittingly entered into a consultancy with HRMC after being retained by Plaintiffs. [R. 201 at pg. 3]. Accordingly, Plaintiffs' expert advised of the conflict and withdrew as an expert consultant for both parties. [*Id.*]. The Plaintiffs, upon learning of the loss of their intended expert rebuttal witness, made the instant motion only one day after the August 11, 2021 deadline imposed by Fed. R. Civ. P. 26(a)(2)(D).

The Court finds good cause for granting the motion for extension of time. HRMC acknowledges that it unwittingly retained Plaintiffs' original FDE expert in this matter, and that the expert did not raise any conflict of interest. *See* [R. 212 at pg. 3 n.4]. Whether Plaintiffs filed the instant motion on August 11, 2021 or August 12, 2021, neither party was aware of the conflict of interest until the eleventh hour. Thus, an extension of time as to the disclosure of Plaintiffs' rebuttal FDE expert witness is warranted. Accordingly, the Defendants will also be allowed an extension of time to take depositions of the rebuttal expert.

### III. Discovery of Expert Financial Information

The heart of the pending dispute is whether Plaintiff is entitled to comprehensive discovery of defense expert witnesses' Internal Revenue Service (IRS) tax returns, IRS form 1099s related to their work as medical experts, and gross income from all medical expert work for the previous

seven (7) years (collectively, "expert financial information").[1] On August 25, 2021, Plaintiffs filed a notice of intent to serve nine subpoenas duces tecum on Defendants' retained expert witnesses. [R. 216]. The notice included intent to serve the subpoenas upon the following witnesses:

1. United States' expert witness, Dr. Mary E. D'Alton, [R. 216-8].
2. HRMC's expert witnesses:
    a. Dr. Todd Sagin and his consulting firm, Sagin Healthcare Consulting, LLC, [R. 216-1, 216-2]
    b. Dr. Dwight J. Rouse, [R. 216-3]
    c. Dr. Jonathan Fanaroff, [R. 216-6]
    d. Michelle L. Wright, [R. 216-7]
3. Dr. Monaco's Expert Witnesses:
    a. Dr. Peter Salgo, [R. 216-9]
    b. Dr. Robert J. Lerer, [R. 216-4]
    c. Dr. Dennis Whaley, [R. 216-5]

The subpoenas request the production of, in essence, seven years' worth of IRS tax returns and all IRS form 1099s that reflect the experts' income received for provision of medical expert services, "such as medical record review, the rendering and provision of medical opinions, and the giving of medical expert testimony by deposition or at trial." [R. 216-2–9].

At least four of HRMC's experts—Rouse, Sagin, Fanaroff, and Wright—timely objected to the subpoenas as of September 7, 2021. [R. 223]. Accordingly, this Court ordered a telephonic status conference that convened on September 9, 2021. At the telephonic conference, the United States moved for an interim protective order preventing discovery of materials sought by the subpoenas. The Court granted the motion, stating that no expert would be required to provide seven years' worth of federal tax returns, but would be required to satisfy the expert disclosure requirements provided in Rule 26. [R. 229]. The Court granted leave for the parties to file motions on the discovery issue. [R. 229].

---

[1] Plaintiffs' motion to compel modified the scope of the subpoenas to solely request the first page of experts' tax returns for the previous seven (7) years, subject to appropriate redaction, so long as they were also provided with the gross income from all medical expert services rendered during the that time. [R. 236 at pg. 8].

On September 19, 2021, the United States moved for a protective order as to the financial information of its expert, Dr. D'Alton. [R. 234]. Subsequently, HRMC moved for a protective order as to the tax information of its experts Rouse, Sagin, Fanaroff, and Wright. [R. 235]. Defendant Raymond Monaco, Jr. moved to join HRMC's motion, [R. 238], and the Court granted the motion, [R. 240]. The same day, Plaintiffs moved to compel experts D'Alton, Rouse, Whaley, Fanaroff, Sagin, and Wright to comply with the subpoenas. [R. 236].

A.  Motions for Protective Orders

1. Defendants' Standing to Move for Protective Orders

As a threshold matter, the Plaintiffs assert that Defendants do not have standing to move for protective orders on behalf of their expert witnesses. *See* [R. 247 at pg. 13] & [R. 246 at pg. 10]. The Defendants, in turn, argue that FED. R. CIV. P. 26(c) permits a party to make such a motion on behalf of a third-party. The rule provides, in relevant part,

> A *party* or any person from whom discovery is sought may move for a protective order . . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

FED. R. CIV. P. 26(C) (emphasis added).

Many district courts in this circuit agree that Rule 26(c), as written, gives a party to litigation standing to move for a protective order on behalf of a non-party from whom discovery is requested. *See e.g.*, *Tenneco Auto. Co. v. Kingdom Auto. Parts*, No. 08-CV-10467-DT, 2009 U.S. Dist. LEXIS 133599, at *5–6 (E.D. Mich. Jan. 6, 2009); *Levitin v. Nationwide Mut. Ins. Co.*, No. 2:12-cv-34, 2012 U.S. Dist. LEXIS 177738, at *13–14 (S.D. Ohio Dec. 14, 2012); *Blumberg v. Ambrose*, No. 13-CV-15042, 2014 U.S. Dist. LEXIS 142781, at *10–11 (E.D. Mich. Oct. 7, 2014); *Van Loo v. Cajun Operating Co.*, No. 14-cv-10604, 2016 U.S. Dist. LEXIS 183418, at *3

(E.D. Mich. Feb. 17, 2016); *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, No. 14-11700, 2016 U.S. Dist. LEXIS 172160, at *8 (E.D. Mich. June 16, 2016).

> [I]t is worth noting that some courts have found that parties have standing to challenge nonparty subpoenas when such challenges are brought pursuant to Rule 26 of the Federal Rules of Procedure, as opposed to Rule 45[.]

*Pogue v. Nw. Mut. Life Ins. Co.*, No. 3:14-CV-598-CRS-CHL, 2016 U.S. Dist. LEXIS 71163, at *11 (W.D. Ky. June 1, 2016). Here, Defendants' motions for protective orders request the Court to forbid the disclosure or discovery of financial information pursuant to Rule 26(c)(1)(A) or 26(c)(1)(D). Thus, Defendants have standing to move for protective orders as to the discovery of their expert witnesses' financial information and the Court shall proceed to the merits of the motions.

**2. Merits of Motions for Protective Orders**

Defendants move for protective orders to protect their respective experts' financial information sought by the Plaintiffs' subpoenas. [R. 234, 235, 238]. Under Rule 26 of the Federal Rules of Civil Procedure, Courts may issue a protective order "if justice requires and to protect individuals from 'annoyance, embarrassment, oppression, or undue burden or expense.'" *Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir. 2001) (citing FED. R. CIV. P. 26(c)). A showing of good cause is also necessary under Rule 26, and "[t]he burden of establishing good cause for a protective order rests with the movant." *Id.* (citing *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973)). The movant must demonstrate particular facts as opposed to "stereotyped and conclusory statements." *Fears v. Kasich (In re Ohio Execution Protocol Litigation)*, 845 F.3d 231, 236 (6th Cir. 2016)). Ultimately, the Court must weigh litigants' right to discovery "with the need to prevent 'fishing expeditions.'" *Id.* at 236–37 (citing *Serrano v. Cintas Corp.*, 699 F.3d 884, 902 (6th Cir. 2012)).

Parties may discover information related to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). This includes information that tends to show a witness's bias, undermine a witness's credibility, or impeach the witness. Discovery of information beyond that which experts provide in their Rule 26(a)(2)(B) disclosures is of growing interest to litigants because of the proliferation of expert witnesses who are, "in effect, hired guns, who, while educated and experienced in the field, are willing and able to hire themselves out to the highest bidder to provide opinions in favor of the hiring party." *Campos v. MTD Prods.*, No. 2-07-0029, 2009 U.S. Dist. LEXIS 28226, at *7 (M.D. Tenn. Apr. 1, 2009). Here, Plaintiffs raise this very concern. *See* [R. 247 at pg. 2]. They assert Defendants have hired "witnesses of last resort" who have been paid "millions of dollars by insurance companies for providing their defendants with purported opinions to create defenses and confuse the issues." [R. 236-1 at pg. 2]. Thus, the subpoenas and subsequent motion to compel are necessary "to determine [the experts'] ties to the insurance carriers and defense firms that routinely hire them." [*Id.*]. The relevancy of expert witnesses' potential biases, according to Plaintiffs, justifies the discovery of seven (7) years' worth of tax returns, form 1099s, and experts' gross income from all sources.

In *Behler v. Hanlon*, 199 F.R.D. 553, (D. Md. 2001), the district court rejected a party's request for the expert's total income over the previous five years, copies of tax returns, and listing of insurance companies that retained him—the court described the request as "overkill." *Behler*, 199 F.R.D. at 554, 561. The *Behler* court exercised its discretion to limit the discovery due to a "real possibility of creating confusion, distraction and even prejudice" without aiding the jury in assessing the expert's credibility. *Behler*, 199 F.R.D. at 561. Other district courts have similarly exercised their discretion based on *Behler*'s rationale. *See Sullivan v. Metro N. R.R. Co.*, No.

3:05cv665 (AHN), 2007 U.S. Dist. LEXIS 88938 (D. Conn. Nov. 30, 2007) (finding that plaintiff's requests for documents, including expert witness's financial documents, were "overkill" and granting protective order); *Campos v. MTD Prods.*, No. 2-07-0029, 2009 U.S. Dist. LEXIS 28226 (M.D. Tenn. Apr. 1, 2009) (granting protective order when plaintiff subpoenaed expert witness's tax returns and other private financial information); *Reed v. Cline*, No. 1:08-cv-473-SEB-TAB, 2010 U.S. Dist. LEXIS 101816 (S.D. Ind. Sep. 24, 2010) (denying defendant's motion to compel discovery of expert witness's gross income or expert consulting income); *Langbord v. United States Dep't of the Treasury*, No. 06-CV-05315, 2008 U.S. Dist. LEXIS 85533 (E.D. Pa. Oct. 20, 2008) (denying plaintiffs' motion to compel disclosure of an expert's compensation from sources unrelated to his role in the litigation); *Rogers v. United States Navy*, 223 F.R.D. 533 (S.D. Cal. 2004) (granting protective order precluding plaintiff from discovering the gross income of government's medical expert); *Cowden v. BNSF Ry.*, No. 4:08CV01534 ERW, 2013 U.S. Dist. LEXIS 117450 (E.D. Mo. Aug. 20, 2013) (denying defendant's motion to compel discovery of expert's tax returns after *in camera* review of the tax returns and determining they are consistent with figures reported in deposition testimony); *Howard v. Alvan Motor Freight*, No. 3:03-CV-683 RM, 2005 U.S. Dist. LEXIS 55765 (N.D. Ind. Mar. 17, 2005) (denying plaintiffs' motion to compel discovery of medical expert's tax returns and IRS form 1099s); *Drake v. Allergan, Inc.*, No. 2:13-cv-234, 2014 U.S. Dist. LEXIS 152896 (D. Vt. Oct. 29, 2014) (denying motion to compel production of documents showing expert witnesses' income from medical legal expert work and the percentage of total income received from medical legal work over a three-year period).

  This Court finds that approach persuasive, and in compliance with the letter and spirit of the civil rules, and will not follow the approach of the Plaintiffs' main authority, *Estate of Jackson v. Billingslea*, No. 18-10400, 2019 U.S. Dist. LEXIS 109393 (E.D. Mich. July 1, 2019). There,

the district court ordered an expert to disclose sensitive financial information, such as copies of all IRS form 1099s issued to the expert in the five previous years and proof of payment for those services rendered. *Id.* at *2. In *Billingslea*, the court was unpersuaded by the *Behler* rationale that compelling discovery of expert witnesses' tax information could have a chilling effect on expert testimony generally. *Id* at *5–6. Importantly, the court chose not to follow *Behler* and similar cases partly because of precedent in its jurisdiction that specifically indicates discovery of gross income and IRS form 1099s are not overly intrusive or burdensome compared to the inquiry into potential bias. *Id.* (citing *Chauvin v. State Farm Mut. Auto. Ins. Co.,* No. 10-CV-11735, 2011 U.S. Dist. LEXIS 67093, 2011 WL 2490870, at *2 (E.D. Mich. June 22, 2011)). In sum, this Court is not bound by *Billingslea* and will use *Behler* as a guidepost, as other district courts have, to analyze the discovery issue at bar.

  Here, the Court finds the subpoenaed expert financial information—just as the *Behler* court found—to be overkill. "[T]he mere fact that such information falls within the scope of legitimate discovery does not mean that parties are entitled to unfettered discovery of impeaching information, by whatever means of discovery they seek." *Behler v. Hanlon*, 199 F.R.D. 553, 561 (D. Md. 2001) (citing FED. R. CIV. P. 26(b)(2)). The Court may also limit discovery methods otherwise permitted if the discovery would be burdensome, duplicative, unnecessarily costly, or insufficiently probative of the issues. FED. R. CIV. P. 26(b)(2). Despite Plaintiffs' misgivings about the "chilling effect" argument put forward by Defendants, the Court recognizes that expert witnesses' willingness to participate in litigation deserves consideration, especially when the same or comparable information can be ascertained through less intrusive means.

  Plaintiffs purport the issue to be whether Defendants' medical expert witnesses are hired guns that are being paid for their opinions, or whether they are merely offering their genuinely-

Page 9 of 13

held opinions for a fee. *See* [R. 236 at pg. 1–2]. The driving force behind the subpoenas, then, is that only a seven-year probe into the expert's financial history can put this issue to rest. Simply put, Plaintiffs' request for financial information exceeds what is ordinarily necessary to demonstrate bias, undermine credibility, or impeach expert witnesses. Thus, Rule 26(b)(2) permits this Court to limit the scope of discovery as to the expert financial information demanded by the subpoenas and motion to compel.

First, federal tax returns and form 1099s from the last seven years are not within the scope of discovery. Plaintiffs' motion to compel modified the subpoena as to request the first page of the returns along with expert's gross income in order to deduce the percentage of income Whaley makes from medical legal work. [R. 236-1 at pg. 8–9]. Even as modified, the request of seven years' worth of IRS tax information along with the expert's gross income from all work is superfluous. The Plaintiffs state that they seek this information solely to deduce a percentage of income derived from medical legal work. In the case of the United States' expert, Dr. D'Alton, the Plaintiffs appeared to have no issue asking this very question during a deposition wherein D'Alton unequivocally stated less than 10% of her gross income could be attributed to expert witness work. [R. 243 at pg. 5]. In the case of HRMC experts, Plaintiffs posed almost identical questions in the depositions of Sagin, Wright, and Rouse. *See* [R. 245-1 at pg. 6; R. 245-2 at pg. 8; R. 236-1 at pg. 7 n.1]. Plaintiffs maintain that the experts only provided "vague and carefully scripted approximations" but do not accuse the experts of being dishonest or refusing to answer the questions outright.[2] [R. 236-1 at pg. 7]. Absent a showing that a witness refuses to answer the

---

[2] Plaintiffs represent to the Court that their notices of deposition "clearly asked [expert] witnesses to be prepared to answer questions" on the topic of their income from medical legal expert work. [R. 236-1 at pg. 7]. Of the experts subpoenaed by Plaintiffs, none of the notices of deposition ask witnesses to be prepared to discuss their financial history, including the percentage of income derived from medical legal expert work. *See* [R. 181, 191, 194, 207, 208, 211].

questions, or that the witness is dishonest, it is unclear why the Plaintiffs resort to an invasive tool of discovery when an inquiry at deposition could have yielded evidence sufficient to confirm or refute the biases held by any given expert.

Next, the Court also finds that gross income from medical legal work over the last seven years exceeds the scope of discovery allowed under the *Behler* framework. Again, the Court is motivated by the reality that demanding non-party witnesses—especially expert witnesses—disclose sensitive information about their income will have a chilling effect on litigation. Expert witnesses are "knowledgeable of information that is scientific, technical, or specialized, generally acquired by long, hard study and experience." *Behler*, 199 F.R.D. at 561. Litigants here, and in other matters, would be harmed if routine discovery of financial information "deter[red] individuals with valuable knowledge and expertise from assisting future juries." *Drake v. Allergan, Inc.*, No. 2:13-cv-234, 2014 U.S. Dist. LEXIS 152896, at *4 (D. Vt. Oct. 29, 2014). As voluntary participants in the judicial process, experts consent to a certain degree of probing into their professional background and being held to account for their compensation in the matter for which they provide expert testimony. However, "[P]ermitting routine disclosure of the expert's gross compensation, from all sources—including those unrelated to litigation activities—would provide the [trier of fact] with little information relevant to a fair assessment of the expert's credibility[.]" *Behler,* 199 F.R.D. at 561.

Indeed, experts' individual finances are relevant to bias, *see Behler*, 199 F.R.D. at 561, but it is incumbent upon the Court to moderate the all-encompassing discovery that parties to litigation come to expect. As the Kentucky Supreme Court aptly explained, "[T]he privacy of the expert as to personal finances, professional associations, and patients/clients should be respected and should be invaded only as necessary to ensure the honesty and accountability of the expert in responding

to legitimate inquiries." *Primm v. Isaac*, 127 S.W.3d 630, 638 (Ky. 2004) (quoting *State ex rel. Creighton v. Jackson*, 879 S.W.2d 639, 643 (Mo. App. 1994)). Plaintiffs here have not provided a compelling reason to intrude into the private finances —including tax returns, form 1099s, gross income from medical legal work, and gross income from all sources over the last seven (7) years. Conclusory allegations of bias do not suffice for this Court to authorize such comprehensive discovery not provided for under the Federal Rules of Civil Procedure. The Court exercises its discretion to grant the Defendants' motions for protective order.

### IV. Conclusion

For the reasons stated herein, having considered the matter fully and being otherwise duly and sufficiently advised,

**IT IS ORDERED** that:

1. Plaintiffs' motion for an extension of time to disclose expert rebuttal opinion [R. 201] is **GRANTED**.
1. HRMC's motion for an extension of time to complete expert discovery [R. 241] is **GRANTED** for the purpose of deposing Plaintiffs' expert rebuttal witness. Defendants' motions for protective orders [R. 234, 235] are **GRANTED**.
2. Plaintiffs' motion to compel compliance with subpoenas duces tecum requesting tax returns, form 1099s, and gross income from Defendants' expert witnesses [R. 236] is **DENIED as MOOT**.
3. The United States' motion for an extension time [R. 154] is **DENIED AS MOOT**, in light of the Court's order at R. 202 denying the plaintiff's motion to amend.
4. HRMC's motion for a status conference [R. 161] is **DENIED AS MOOT**.

Signed November 19, 2021.

