UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| CORRENIA J. PROFITT, *Individually and as Administratrix of the Estate of Corbin Raie Hill*, and SHAWN HILL, <br><br>    Plaintiffs, <br><br> V. <br><br> HIGHLANDS HOSPITAL CORPORATION et al., <br><br>    Defendants. | CIVIL ACTION NO. 7:19-15-KKC <br><br><br> <u>**OPINION AND ORDER**</u> |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on multiple motions for summary judgment (DEs 259, 261, 263, 265), Plaintiffs' motion for leave to file a supplement to a response (DE 288), Plaintiffs' motion for leave to file a sur-reply (DE 292), and Plaintiffs' motion for an extension of time. (DE 268.) The motions having been fully briefed in a total of eighteen separate filings, the matter is now ripe for the Court's review.

**I. Background**

The factual background of this case has been laid out in detail elsewhere in the record, but the Court will provide an overview of the relevant facts as context for the motions at issue. In January 2017, Correnia J. Profitt went to the emergency department at Highlands Regional Medical Center (HRMC) after experiencing health issues related to her pregnancy. The hospital monitored her for several hours before discharging her late in the evening. Plaintiff returned to HRMC approximately five hours later, and hospital personnel determined that a placental abruption had occurred, necessitating an emergency caesarean delivery of Plaintiff's child. Plaintiff's son, Corbin Raie Hill, was delivered, but required

1

placement of an endotracheal tube. Corbin suffered tension pneumothorax and was airlifted to University of Kentucky Medical Center where he later died.

Profitt, individually and as administratrix of the estate of Corbin Raie Hill, and Shawn Hill, Corbin's father, originally sued HRMC and other defendants[1] in January 2019 in Floyd County Circuit Court, but Defendants timely removed to federal court. (DE 1.) The litigation has progressed in this Court and the parties have engaged in extensive discovery. Now, Plaintiffs and Defendants HRMC have filed motions for summary judgment on various issues.

## II. Summary Judgment Standard

Fed. R. Civ. P. 56(a) directs the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion with particularity. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing the motion must then make an affirmative showing of a genuine dispute in order to defeat the motion. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). To do so, the non-moving party must direct the Court's attention "to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

The Court will draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). If the Court determines that a rational fact finder could not find for the non-moving party based on the record as a whole, there is

---

[1] Defendants "Highlands Hospital Corporation" and "Consolidated Health Systems, Inc." are referred to collectively as "HRMC."

2

no genuine issue for trial, and the Court should grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Plaintiffs' Motion for Extension of Time *Nunc Pro Tunc*

Plaintiffs filed two dispositive motions (DEs 263, 265) after the dispositive motion deadline due to technical difficulties and move the Court to consider the filings timely filed. (DE 268.) Federal Rule of Civil Procedure 6(b) provides that when a party moves the court to accept a filing after the relevant deadline, the court may do so where the failure to file before the deadline was the result of excusable neglect. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006). An excusable neglect determination in this context depends on the balancing of five principal factors: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith. *Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Plaintiffs attempted to file their motions before the deadline but, due to technical difficulties, were unsuccessful until a little less than forty minutes after the deadline. In this instance, the Court finds that, overall, the *Pioneer* excusable neglect factors weigh in favor of accepting Plaintiffs late-filed motions. Accordingly, Plaintiffs' motion (DE 268) is GRANTED, and Plaintiffs' two dispositive motions will be considered timely filed.

### IV. Plaintiffs' Motion for Summary Judgment on the Issue of Liability as to the United States

Plaintiffs seek summary judgment on the issue of the United States' liability for the actions of Dr. Leslieann Dotson, a pediatrician employed by Big Sandy Health Care, Inc. ("Big Sandy"), a federally funded medical group. (DE 263-1.) For the reasons set forth herein, Plaintiffs' motion is denied.

Plaintiffs argue that there is no genuine issue of material fact that: (1) Dr. Dotson deviated from the applicable standards of care in her management of Corbin's resuscitation and of his airway; (2) her alleged deviations caused, in part, Corbin's pain and suffering, brain damage, and death; and (3) as a matter of law under the FTCA, the United States is liable for the injuries and damages caused by Dr. Dotson's deviations from the applicable standards of care. (DE 263-1 at 3.)  Plaintiffs spend much of their briefs discussing why the United States would be liable for Dr. Dotson's negligence under the FTCA (DE 263 at 16–21) and trying to establish Dr. Dotson's negligence (DE 263 at 18–19; DE 312 at 5–6).

On the other hand, the United States argues that: (1) Plaintiffs never presented claims against Dr. Dotson in their SF-95 administrative claim forms as part of the FTCA process;[2] and (2) no allegations were made against Dr. Dotson in Plaintiffs' First Amended Complaint.[3] (DE 269 at 2–3.)  Accordingly, the United States asserts that Plaintiffs failed to follow the administrative procedures of the FTCA as to claims against Dr. Dotson, and, thus, sovereign immunity is not waived as to any such claims. (DE 269 at 5.)  Plaintiffs' reply primarily responds to that argument. (DE 312 at 6–13.)

While sovereign immunity generally bars claims against the United States without its consent, the Federal Tort Claims Act waives sovereign immunity for claims brought by plaintiffs seeking money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Copen v. United States*, 3 F.4th 875, 879 (6th Cir.

---

[2] Plaintiffs mentioned Dr. Gibson, but not Dr. Dotson, in their SF-95 administrative claim form. (DE 263-12.)
[3] Plaintiffs mentioned Dr. Gibson, but not Dr. Dotson, in their First Amended Complaint. (DE 39 at 3.)

4

2021) (quoting 28 U.S.C. § 1346(b)(1)). In order to pursue a claim under the FTCA, the claimant must "present" the claim to the appropriate federal agency.

Once a claim has been presented and subsequently denied by the agency—or the agency fails to make a final disposition within six months—a claimant may file suit in federal district court. *Conn v. United States*, 867 F.2d 916, 920 (6th Cir. 1989). If the FTCA procedures have been followed, the United States may be found liable for a tort "in the same manner and to the same extent as a private individual under like circumstances . . ." 28 U.S.C. § 2674; *Richards v. United States*, 369 U.S. 1, 6 (1962). The FTCA "is fundamentally limited to cases in which a private individual would be liable under like circumstances." *Premo v. United States*, 599 F.3d 540, 544 (6th Cir. 2010) (quoting *United States v. Cundiff*, 555 F.3d 200, 217 (6th Cir. 2009)) (internal brackets and quotations omitted).

The United States' response (DE 269) and Plaintiffs' reply (DE 312) focus primarily on the FTCA's presentment requirement. However, even assuming *arguendo* that Plaintiffs properly presented a claim against Dr. Dotson to the Department of Health & Human Services which was subsequently denied, the result would be that Plaintiffs' were authorized to initiate a civil suit against the United States asserting negligence by Dr. Dotson in the same manner and to the same extent as a civil suit against Dr. Dotson if she were a private individual. As the FTCA itself, the Supreme Court, and the Sixth Circuit have emphasized that the FTCA is about pursuing damages for torts as if a plaintiff were suing a private individual, it is proper for the Court to assess Plaintiffs' claims here with that principle in mind.

In Plaintiffs' First Amended Complaint, Plaintiffs assert claims alleging negligence by Dr. Gibson. Specifically, Plaintiffs describe their claims against the United States as arising "from medical negligence in connection with medical care provided to Correnia Profitt and Corbin Raie Hill by Sammie Gibson, D.O. ('Dr. Gibson') of Big Sandy Health Care, Inc.,

5

d/b/a Physicians for Women ("Big Sandy") on January 2, 2017 and January 3, 2017." (DE 39 at 3 ¶ 6.) Plaintiffs further explain in their First Amended Complaint that "[t]he claims herein against the United States are brought pursuant to the FTCA and 28 U.S.C. §§ 1346(b)(1) and 2401 for money damages as compensation for personal injuries caused by the negligence of Dr. Gibson who is, or was at all relevant times, an ostensible agent and/or employees [sic] of the PHS, and thus the United States." (DE 39 at 3 ¶ 8.)

It is uncontroverted that Plaintiffs did not assert any allegations of negligence against Dr. Dotson in either their original Complaint or in their First Amended Complaint. Yet, more than 20 months after the deadline to amend pleadings, Plaintiffs sought to file a Second Amended Complaint containing allegations against Dr. Dotson. (DE 151.) This Court affirmed Magistrate Judge Atkins' denial of the motion to file a Second Amended Complaint on grounds that Plaintiffs had been in possession of records that would have reasonably allowed them to plead a plausible claim against Dr. Dotson long before the deadline for amending pleadings. (DE 258.)

Plaintiffs contend that despite having failed to plead negligence against Dr. Dotson in either their original Complaint or First Amended Complaint, they are entitled to summary judgment on the issue of the United States' liability for Dr. Dotson's alleged actions as a pediatrician employed by Big Sandy. In support of their position, Plaintiffs assert that their SF-95 combined with the statements made in their First Amended Complaint are sufficient to establish that the United States is vicariously liable for the actions of Dr. Dotson in this case.

Dr. Dotson was not named in Plaintiffs' SF-95 claim (DE 263-12 at 3–6), but the medical records available at the time and submitted with the claim apparently detailed Dr. Dotson's alleged negligence. (DE 312 at 11) ("Even more, Plaintiffs' SF-95 included the records of Dr. Dotson's negligent treatment of Corbin . . . which reflect Dr. Dotson's name as

6

a treating provider 159 times.") (emphasis in original). While the FTCA permits parties to pursue civil suits against the United States for the actions of its agents or employees, the FTCA does not excuse plaintiffs from pleading a cause of action against the alleged negligent actor. Having failed to prevail on their untimely motion to file a Second Amended Complaint, Plaintiffs now maintain that they are entitled to summary judgment against the United States because the United States should have been sufficiently notified of their claims against Dr. Dotson by the statement in Plaintiffs' First Amended Complaint that "the United States is vicariously liable for the negligent acts of its deemed employees and ostensible agents, including without limitation Dr. Gibson." (DE 39 at 3 ¶ 7.)

In their motion for summary judgment, Plaintiffs simply seek to sidestep the pleading requirements of the Federal Rules of Civil Procedure and to violate the spirit of the FTCA, which permits civil suits against federal government employees in certain circumstances as if they were private individuals. *See* 28 U.S.C. § 2674; *Richards*, 369 U.S. at 6; *Premo*, 599 F.3d at 544. In a lawsuit against private individuals, Plaintiffs would not be able to plead a negligence claim against Dr. Gibson, seek to add allegations against Dr. Dotson 20 months after the Court's deadline to amend pleadings, have their motion to amend denied by the Court, and then seek summary judgment as to Dr. Dotson's liability. The Court cannot allow Plaintiffs to do what they would not be able to in the course of a negligence lawsuit against a private individual just because the United States has substituted for Dr. Gibson as a defendant by virtue of the FTCA.

For these reasons, the United States cannot be held liable for any negligent actions taken by Dr. Dotson in this case, and Plaintiffs' motion for summary judgment on the issue of liability as to the United States (DE 263) is DENIED.

**V. Plaintiffs' and HRMC's Cross-Motions for Summary Judgment Regarding Ostensible Agency**

Defendants HRMC seek summary judgment on the claims against them, based on vicarious liability, for the alleged negligence of Dr. Raymond Monaco, Dr. Sammie Gibson, Dr. Leslieann Dotson, and CRNA Brenda Watson.  (DE 259.)  Defendants argue that Dr. Monaco, Dr. Gibson, Dr. Dotson, and CRNA Watson were independent contractors, not actual or ostensible agents of HRMC, and thus HRMC cannot be held vicariously liable for any of their potential acts of negligence. Plaintiffs counter that "at minimum" several issues of material fact as to the ostensible agency of these four medical providers foreclose the possibility of summary judgment.  (DE 271 at 2.)  Plaintiffs also move in their own right for summary judgment declaring that Dr. Gibson, Dr. Dotson, and CRNA Watson were ostensible agents of HRMC.  (DE 265.)  HRMC disputes Plaintiffs' motion for reasons similar to those laid out in HRMC's own motion for summary judgment, and the United States disputes Plaintiffs' motion as to Dr. Gibson, arguing that Plaintiffs' exclusive remedy as to any negligence by Dr. Gibson is the FTCA, not principles of ostensible agency.  (DE 270.)

**A. Dr. Monaco**

Defendants seek summary judgment on the issue of Dr. Monaco's ostensible agency and, consequently, HRMC's potential vicarious liability for any negligence by him. Plaintiffs do not seek summary judgment as to Dr. Monaco in their own motion, but their response to Defendants' motion expresses opposition—albeit briefly—to a summary judgment finding as to Dr. Monaco.  (DE 271 at 17.)  The Court finds for Defendants on this issue.

Defendants rely primarily on Sixth Circuit and Kentucky caselaw concerning the effect of consent form disclaimers by hospitals on the ostensible agency of independent contractor medical providers that care for patients in their hospitals.

In *Roberts v. Galen of Virginia, Inc.*, 111 F.3d 405 (6th Cir. 1997), *reversed on other grounds in Roberts v. Galen of Virginia, Inc.*, 525 U.S. 249 (1999), the Sixth Circuit described Kentucky law as relying "heavily on the manner in which the principal holds itself out to the public in determining whether an ostensible agency or apparent authority relationship exi[s]ts." *Id.* at 411. The hospital in *Roberts* had a consent form with a disclaimer telling the patient that "medical treatment" and "certain professional services" would be provided by "physicians, residents, and medical students" who are "independent practitioners and are not employees or agents of" the hospital. *Id.* at 412–13. The court explained: "Whether or not [the patient] read or signed the disclaimer is not dispositive. . . . As stressed by Kentucky case law, the result should, instead, turn on whether the hospital holds its physicians out to be employees or something else." *Id.* at 413. Accordingly, the Sixth Circuit affirmed the ruling of the district court, finding that the physicians were not ostensible agents of the hospital: "[U]nder Kentucky law the actions of the hospital, rather than the knowledge of the patient, is controlling in a case where the patient is unable to obtain actual knowledge of the hospital's disclaimer. Here, [the hospital] clearly attempted to alert the public that its physicians were not employees or agents of the hospital." *Id.* at 413.

In *Sneed v. Univ. of Louisville Hosp.*, 600 S.W.3d 221 (Ky. 2020), the Kentucky Supreme Court cited *Roberts* with approval in a similar, but not identical, factual situation. The hospital in *Sneed* had a disclaimer that stated in part that "[p]hysicians are not hospital employees and the hospital is not responsible for the actions of physicians" and

9

confirmed that patients "may require the services of physicians or groups of physicians who are not hospital employees including emergency room physicians, radiologists, pathologists, anesthesiologists, etc., who bill and collect independently for their services." *Id.* at 231. The Kentucky Supreme Court acknowledged that the form "could have been clearer" but found:

> However, despite these potential ambiguities, we conclude that the Hospital took reasonable steps to notify patients that they would be treated by independent contractor physicians. We see no evidence of any intent of the Hospital to deceive its patients into believing that the physicians were employees of the Hospital, nor do we see evidence of the Hospital holding the physicians out to be employees. Therefore, we hold that no genuine issue of material fact existed as to whether [the physicians] were ostensible agents of the Hospital.

*Id.* at 233.

Plaintiffs argue that *Roberts* and *Sneed* are distinguishable because the consent form disclaimers in those cases were more unequivocal than the disclaimer at issue here. Plaintiffs urge the Court to follow an Illinois state court case, *Hammer v. Barth*, 48 N.E.3d 769, 777 (Ill. App. 2016), in which the court found:

> The form states that "*some or all* of the physicians who provide medical services" at the hospital "are not employees or agents of the hospital, but rather independent practitioners* *." It further states that "[n]on-employed physicians *may* include, but are not limited to, those practicing emergency medicine, trauma, cardiology, obstetrics, surgery, radiology, anesthesia, pathology and other specialties." (Emphasis added.) Such a disclaimer is ambiguous in that one could assume that some or all or none of the treating physicians are independent contractors, and that independent physicians may or may not include cardiologists.

*Id.* at 490. The court in *Hammer* cited Illinois state caselaw on the issue, determined that the record indicated that the hospital held out the physician as its employee, and remanded to the state trial court because questions of material fact existed regarding the plaintiff's claim. *Id.* at 490–92.

While all cases cited by the parties have some relevance to the issues in this case, the Court is inclined to follow the principles laid out by the Sixth Circuit and the Kentucky Supreme Court. The consent form in this case reads:

> I understand that certain professional services are rendered at the Medical Center by physicians, residents, and medical students who are independent practitioners and not employees or agents of the Medical Center. These services may include, but are not necessarily limited to, services in the following medical specialties: anesthesiology, cardiology, emergency medicine, infectious diseases, internal medicine, neurology, neurosurgery, oncology, pulmonology, radiology, surgery, and urology. The Medical Center is not responsible for treatment rendered by physicians, residents, or medical students who are not employees of the Medical Center.

(DEs 259-2, 259-3.) Dr. Monaco, at the time of the incident, was a physician practicing anesthesiology. HRMC clearly attempted to alert the public that an anesthesiologist physician was likely an independent contractor rather than an employee or agent of the hospital. *Roberts*, 111 F.3d at 413. Further, there is no evidence of any intent of HRMC to deceive its patients into believing that anesthesiologist physicians were employees of HRMC, nor do we see evidence of HRMC holding such physicians out as employees. *Sneed*, 600 S.W.3d at 233.

Accordingly, the Court finds that no genuine issue of material fact exists as to whether Dr. Monaco was an ostensible agent of HRMC. He was not.

**B. Drs. Gibson and Dotson**

Much of the analysis of Dr. Monaco's ostensible agency can be applied to Drs. Gibson and Dotson with the same result. Drs. Gibson and Dotson differ from Dr. Monaco for purposes of this issue only in that their specialties—obstetrics and pediatrics, respectively—were not specifically listed in the consent form. Thus, the issue for the Court to decide is the effect of the phrase: "These services may include, but are not necessarily limited to, services in the following medical specialties: . . . ." (DEs 259-2, 259-3.)

11

As the Court discussed above, the guiding principles from the Sixth Circuit and the Kentucky Supreme Court in determining the ostensible agency of medical providers in this situation are: (1) did the hospital clearly attempt to alert the public that the provider was likely an independent contractor rather than an employee or agent of the hospital; (2) did the hospital intend to deceive its patients into believing that the provider was an employee of the hospital; and (3) is there evidence that the hospital held the provider out as an employee? Here, HRMC clearly attempted to alert the public that physicians, residents, and medical students who are independent contractors rather than employees or agents of HRMC would render certain professional services. HRMC listed some examples (including Dr. Monaco's specialty: anesthesiology), but explicitly stated that the disclaimer applied to other unlisted medical specialties too. There is no evidence that HRMC intended to deceive its patients into believing that physicians practicing obstetrics and pediatrics were employees of the hospital or that HRMC held them out as such.

Accordingly, the Court finds that no genuine issue of material fact exists as to whether Drs. Gibson and Dotson were ostensible agents of HRMC. They were not. Because Drs. Gibson and Dotson were clearly not ostensible agents of HRMC, the Court need not analyze the potential effects of the FTCA's "exclusive remedy" provisions on Plaintiffs' ostensible agency claims as to these physicians.

**C. CRNA Watson**

The analysis as to CRNA Watson is more complicated. Plaintiffs argue that the disclaimer language does not apply to Watson because she is a nurse. (DE 265 at 17.) HRMC argues that Watson is not simply a "nurse" but a Certified Registered Nurse Anesthetist who provides specialized care in anesthesiology. (DE 272 at 11.) However, HRMC concedes the operative point that Watson is "not a physician." (DE 272 at 11.)

12

Returning to the guiding principles from caselaw discussed above, it is not clear that HRMC attempted to alert the public that nurses—CRNAs or not—were likely independent contractors rather than employees or agents of the hospital. In other provisions of the consent form, HRMC refers to "nurses or care providers" and "physicians (including interns and residents), nurses, medical students, and other health care personnel[.]" In that larger context, the consent form's statement in the provision at issue here that certain services may be rendered by "physicians, residents, and medical students who are independent practitioners and not employees or agents of the Medical Center" could seem to deliberately exclude nurses. On the other hand, there is no evidence that HRMC intended to deceive its patients into believing that nurses were employees of the hospital or that HRMC held them out as such. In balancing these competing factors, the Court gives greater weight here to the fact that the plain text of the consent form attempts to put the public on notice that certain "physicians, residents, and medical students" are independent practitioners, and CRNA Watson is not a physician, resident, or medical student. Given that HRMC did not provide any notice that nurses might be independent practitioners, Plaintiffs had the right to assume that treatment received by nurses, including CRNA Watson, was being rendered through hospital employees and that any negligence associated with that treatment would render the hospitable responsible. *See Cundiff v. Cheng*, No. 2019-CA-0374-MR, 2021 WL 1431855, at *11 (Ky. App. 2021) (analyzing the surviving impact of *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255 (Ky. 1985) after its partial abrogation by *Sneed*).[4] Accordingly, CRNA Watson was an ostensible agent of HRMC.

The fact that CRNA Watson was an ostensible agent of HRMC does not end the analysis. As Defendants point out, the magistrate judge denied Plaintiffs' motion for leave

---

[4] Plaintiffs expressed concern that *Cundiff* is a non-final opinion—however, the Kentucky Supreme Court has since denied review.

13

to file a Second Amended Complaint naming CRNA Watson as a defendant, and the Court agreed. (DEs 202, 258.) Thus, the Court must determine whether HRMC can be held liable for any potentially negligent care provided by CRNA Watson even though the Plaintiffs were not permitted to untimely add her as a defendant. This question is addressed most squarely by *Cohen v. Alliant Enters., Inc.*, 60 S.W.3d 536 (Ky. 2001). In *Cohen*, "the plaintiff was allowed to proceed against a defendant hospital under the theory of respondeat superior even though a suit against the doctor/agent was prohibited by the statute of limitations." *Zetter v. Griffith Aviation, Inc.*, 435 F. Supp. 2d 622, 630 (E.D. Ky. 2006). The Kentucky Supreme Court explained:

> The fact that [the plaintiff] cannot recover from the agent here does not negate the fact that liability may exist, and that it can be imputed to the principal. It is the negligence of the servant that is imputed to the master, not the liability. The test as to the liability of the master is whether the servant was guilty of negligence . . . [.]

*Cohen*, 60 S.W.3d at 538 (internal quotation marks and citations omitted). Here, Plaintiffs were prohibited from adding CRNA Watson as a defendant because Plaintiffs failed to demonstrate good cause to amend the scheduling order to permit an untimely filing of an amended pleading. (DE 258 at 5–10.) However, Plaintiffs did adequately plead harm by HRMC in their operative Amended Complaint (DE 39 at 7–12). *See O'Bryan v. Holy See*, 556 F.3d 361, 382 n.9 (6th Cir. 2009) ("[A] complaint that generally alleges an employer's negligence need not specifically identify each employee involved to hold the employer liable under respondeat superior.") (internal citation omitted). By the logic of *Cohen*, Plaintiffs can still pursue claims against HRMC for any potential negligence by an ostensible agent like CRNA Watson even though the agent is not a defendant in her own personal capacity.

\*\*\*

Accordingly, HRMC's motion for partial summary judgment (DE 259) and Plaintiffs' motion for partial summary judgment (DE 265) are GRANTED IN PART and DENIED IN

14

PART as follows: (1) the Court finds there is no issue of material fact that Drs. Monaco, Gibson, and Dotson were not actual or ostensible agents of HRMC; and (2) the Court finds that there is no issue of material fact that CRNA Watson was an ostensible agent of HRMC, and HRMC may be held vicariously liable if, in the consideration of this case, CRNA Watson is found to have committed acts of negligence within the scope of her employment.

### VI. HRMC's Motion for Summary Judgment Regarding Negligent Hiring, Supervision, and/or Retention; Negligent Infliction of Emotional Distress; and Punitive Damages

Defendants HRMC seek summary judgment as to Plaintiffs' claims for negligent hiring, supervision, and/or retention, negligent infliction of emotional distress, and punitive damages. Plaintiffs oppose as to all three claims. The Court will address each in turn.

### A. Plaintiffs' Motion for Leave to File Supplement to Plaintiffs' Response

As a preliminary matter, the Court will address Plaintiffs' motion (DE 288) for leave to file a supplement to their response to HRMC's motion for summary judgment. Plaintiffs contend that HRMC's reply pointed to several assertions by Plaintiffs as lacking a citation to evidence in the record, and Plaintiffs' tendered supplement seeks to provide several citations to bolster Plaintiffs' assertions. Plaintiffs' tendered supplement is brief, and its admission will not prejudice the Defendants. Accordingly, Plaintiffs' motion (DE 288) for leave to file a supplement to their response is GRANTED.

### B. Plaintiffs' Motion for Leave to File Sur-Reply

In addition to their supplement, Plaintiffs' seek leave (DE 292) to file a sur-reply to HRMC's motion for summary judgment. Plaintiffs argue that HRMC made certain assertions for the first time in HRMC's reply brief, and a sur-reply is necessary to rebut those assertions. HRMC opposes (DE 299) Plaintiffs' motion, explaining that it did not raise new arguments or cite new evidence in its reply but rather responded to assertions made in Plaintiffs' response.

15

As this Court has stated in the past, the Court's Local Rules do not contemplate or permit the filing of a sur-reply, LR 7.1(c), (g), and such filings are not permitted absent leave of the Court. Such leave is only granted when new arguments or evidence are raised in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated. *Key v. Shelby Cty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (citing *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)). Sur-replies tend to be highly disfavored, as they are usually "a strategic effort by the nonmoving party to have the last word on a matter[,]" *Liberty Legal Found. v. Nat'l Democratic Party of the USA*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012), and district courts have discretion in deciding whether to allow a party to file a sur-reply. *Key*, 551 F. App'x at 264.

This case, due to the complicated nature of the medical procedures involved and the surrounding circumstances, contains a significant volume of evidence and testimony from various sources, including medical records, medical opinion witnesses, and the treating providers themselves. The Court does not fault the parties for going through each other's briefings with a fine-toothed comb and seeking to correct every "erroneous" assertion they perceive to be made by their opponent. Plaintiffs' tendered sur-reply (DE 292-1) and HRMC's response in opposition to Plaintiffs' motion for leave to file it (DE 299) do not significantly assist the Court in its analysis at this stage, but the two documents marginally clarify the positions of the parties. Accordingly, Plaintiffs' motion for leave to file a sur-reply (DE 292) is GRANTED, and the Court will also consider HRMC's response (DE 299) in its analysis.

**C. Negligent Hiring, Supervision, and/or Retention**

HRMC seeks summary judgment as to Plaintiffs' claim for negligent hiring, supervision, and/or retention, and Plaintiffs oppose. (DE 261 at 7–8; DE 274 at 23.) HRMC specifically moves for summary judgment as to "Plaintiffs' claim that HRMC negligently hired, supervised, or retained Dr. Gibson or Monaco[.]" (DE 261-1 at 7–8.) HRMC's motion

16

does not mention Dr. Dotson or CRNA Watson as to this issue because they are not named under this count in the First Amended Complaint. (DE 39 at 9–10.)

Both parties seem to agree that Kentucky law authorizes such a claim when there is a principal-agent relationship. *See Carr v. Lake Cumberland Regional Hosp.*, 2017 WL 4978124, \*7 (E.D. Ky. Oct. 31, 2017) ("Kentucky law does not limit liability for this tort to employer-employee relationships, but also allows liability to extend to principal-agent and servant relationships.") (citing *Smith v. Isaacs*, 777 S.W.2d 912, 914 (Ky. 1989)). As discussed above, Drs. Monaco and Gibson were not ostensible agents of HRMC, so the claim fails as a matter of law as to those individuals.

Accordingly, the Court GRANTS summary judgment in favor of HRMC as to Plaintiffs' claim for the negligent hiring, supervision, and/or retention of Drs. Monaco and Gibson.

**D. Negligent Infliction of Emotional Distress**

HRMC also seeks summary judgment as to Plaintiffs' claim for negligent infliction of emotional distress (NIED), arguing that it is a "gap-filler" tort that cannot proceed when—as here—the claim derives from the same events as a broader negligence claim, for which the plaintiff may recover damages for emotional distress. (DE 261 at 13–15.) Plaintiffs counter that Kentucky courts have followed this logic as to claims for intentional infliction of emotional distress (IIED), *see, e.g., Childers v. Geile*, 367 S.W.3d 576, 582 (Ky. 2012), but they have not yet applied it to NIED claims. (DE 274 at 24.)

In the absence of guidance from Kentucky state courts, federal district courts in Kentucky have extended the logic of *Childers* to NIED claims. *See Horn v. City of Covington*, No. 14-73-DLB-CJS, 2015 WL 4042154, at \*11 (E.D. Ky. July 1, 2015) (collecting cases); *Lyttle v. Farley*, No. 6:16-114-KKC-HAI, 2017 WL 3431394, at \*6 (E.D. Ky. Aug. 9, 2017); *Downing*

17

*v. Petry*, No. 5:20-187-DCR, 2021 WL 707654, at *4 (E.D. Ky. Feb. 23, 2021). This Court, as it has in the past, will do the same.

Accordingly, the Court GRANTS summary judgment in favor of HRMC as to Plaintiffs' claim for negligent infliction of emotional distress.

### E. Punitive Damages

Finally, HRMC seeks summary judgment as to Plaintiffs' claim for punitive damages. (DE 261 at 15–22.) While Plaintiffs include "Punitive Damages" as a "Count" among their claims, a claim for punitive damages is not a separate cause of action but a possible remedy. *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378–79 (W.D. Ky. 2012).

In Kentucky, punitive damages may be awarded when the evidence satisfies either the statutory standard of KRS 411.184—which requires clear and convincing evidence that the defendant acted toward the plaintiff with oppression, fraud, or malice—or the common law standard of gross negligence, which requires conduct in wanton or reckless disregard for the lives, safety, or property of others. *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 870–71 (Ky. 2016). The Kentucky Supreme Court and federal district courts in Kentucky have found gross negligence to equate to egregious disregard for a decedent's health and well-being, egregious instances of misconduct, and egregious recklessness and disregard for patient safety. *Williams v. Baptist Healthcare Sys., Inc.*, 2019 WL 7546592, at *8–10 (E.D. Ky. Sept. 30, 2019) (citing *Saint Joseph Healthcare, Inc.*; *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324 (Ky. 2014); and *Southard v. Belanger*, 966 F. Supp. 2d 727 (W.D. Ky. 2013)). Punitive damages cannot be assessed against an employer for the conduct of an employee or agent unless the offensive conduct was (1) authorized by the employer; (2) anticipated by the employer; or (3) ratified by the employer. *Id.* at 873.

The Court's determination that Drs. Monaco, Gibson, and Dotson were not agents of HRMC forecloses the assessment of punitive damages against HRMC for their actions.

Furthermore, even drawing all reasonable inferences in favor of the Plaintiffs, a review of Plaintiffs' response (DE 274), supplement (DE 288), and sur-reply (DE 292) makes clear that Plaintiffs have not provided evidence that would allow a rational fact-finder to find that CRNA Watson exhibited the kind of egregious recklessness, disregard, or misconduct that would warrant punitive damages for her actions. This leaves the possibility of punitive damages against HRMC itself for its own gross negligence.

Plaintiffs argue that HRMC was grossly negligent in its alleged violations of federal statutory requirements and its own policies and procedures, citing the testimony of several of Plaintiffs' opinion witnesses. (DE 274 at 12–13; DE 292-1 at 2–9.) It is unclear the extent to which an employer may be held liable for punitive damages for its policies or procedures—outside of a vicarious liability framework—in a situation where the bulk of the allegedly negligent behavior was undertaken by various actors working under a company's policies and procedures. *MV Transp., Inc.*, 433 S.W.3d at 338 ("[A] finding of gross negligence and an award of punitive damages may be based, at least in part, upon evidence regarding the policies and procedures of the company."). Having reviewed the voluminous and detailed submissions of both parties on this issue, the Court fails to see evidence that would allow a rational fact-finder to find that HRMC exhibited the kind of egregious recklessness, disregard, or misconduct that would warrant punitive damages. While Plaintiffs have cited testimony by their opinion witnesses expressing a belief that HRMC or its employees/agents deviated from standards of care, Plaintiffs have not cited testimony or evidence indicative of egregious behavior constituting gross negligence.

Accordingly, the Court GRANTS summary judgment in favor of HRMC on the issue of punitive damages, and the Court will not submit a punitive damages instruction to the jury.

## VII. Conclusion

Accordingly, for the reasons set forth herein, IT IS HEREBY ORDERED:

(1) Plaintiffs' motion for extension of time (DE 268) is GRANTED, and Plaintiffs' two dispositive motions will be considered timely filed;

(2) The United States cannot be held liable for any negligent actions taken by Dr. Dotson in this case, and Plaintiffs' motion for summary judgment on the issue of liability as to the United States (DE 263) is DENIED;

(3) HRMC's motion for partial summary judgment (DE 259) and Plaintiffs' motion for partial summary judgment (DE 265) are GRANTED IN PART and DENIED IN PART as follows:
   a. the Court finds there is no issue of material fact that Drs. Monaco, Gibson, and Dotson were not actual or ostensible agents of HRMC; and
   b. the Court finds that there is no issue of material fact that CRNA Watson was an ostensible agent of HRMC, and HRMC may be held vicariously liable if, in the consideration of this case, CRNA Watson is found to have committed acts of negligence within the scope of her employment;

(4) Plaintiffs' motion (DE 288) for leave to file a supplement to their response to HRMC's motion for summary judgment is GRANTED;

(5) Plaintiffs' motion for leave to file a sur-reply (DE 292) is GRANTED, and the Court has also considered HRMC's response (DE 299) in its analysis;

(6) HRMC's motion for partial summary judgment (DE 261) is GRANTED as follows:
   a. the Court GRANTS summary judgment in favor of HRMC as to Plaintiffs' claim for the negligent hiring, supervision, and/or retention of Drs. Monaco and Gibson;
   b. the Court GRANTS summary judgment in favor of HRMC as to Plaintiffs' claim for negligent infliction of emotional distress; and
   c. the Court GRANTS summary judgment in favor of HRMC on the issue of punitive damages, and the Court will not submit a punitive damages instruction to the jury.

This 28th day of April, 2022.

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY